William **SAMPLEY** and Sammy Martinez, Plaintiffs-Appellants,

v.

Ronald **RUETTGERS**, Lieutenant, Wyoming State Penitentiary, Defendant-Appellee.

No. 82–2138.

United States Court of Appeals, Tenth Circuit.

April 5, 1983.

William Sampley, pro se.

Allen C. Johnson, Sr. Asst. Atty. Gen., the State of Wyo., Cheyenne, Wyo., for defendant-appellee.

Before SETH, Chief Judge, and McKAY and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

██ William Sampley and Sammy Martinez appeal the district court's dismissal of their section 1983[1] action as frivolous. On this appeal, we treat the dismissal as summary judgment for the defendants.[2] Accordingly, we must construe the pleadings and affidavits in a manner most favorable to the plaintiffs to determine whether any material factual disputes exist.

## I

Defendant Ruettgers, a guard at the Wyoming State Penitentiary, was giving haircuts to two inmates, plaintiffs Sampley and Martinez. During the haircut, according to the complaint,

> [t]he defendant, without provocation, grabbed plaintiff Sampley by the throat with one hand, strangling him as he slammed his head against a steel window frame. Plaintiff Sampley begain [sic] to

lose consciousness and sagged against the wall and the defendant brought up his knee and struck him in the groin. Plaintiff Sampley, in reaction to the severe pain in his groin, raised his left leg off the floor and the defendant struck him several times in the left thigh with the barber clippers with the clippers cutting the plaintiff in two (2) places, one (1) of which was at least an inch deep.

Record, vol. 1, at 4. Mr. Ruettgers then cut Mr. Sampley's hair, spit on the hair clippers, pushed Mr. Martinez, and cut Mr. Martinez's hair. The plaintiffs brought this action, claiming that Mr. Ruettgers, by assaulting them, subjected them to cruel and unusual punishment and deprived them of liberty without due process. A magistrate ordered penitentiary officials to investigate the incident. *See Martinez v. Aaron,* 570 F.2d 317 (10th Cir.1978). The officials investigated and submitted a report in which they concluded that Mr. Ruettgers had used no unnecessary force against the plaintiffs. They also submitted an affidavit supporting their conclusion and two affidavits by inmates supporting the complaint's allegations. The trial court then dismissed the complaint. Apparently relying on the prison report,[3] it held that "[t]here is no substantive evidence which would support a

---

**1.** Section 1983 provides in part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (Supp. IV 1980).

**2.** The district court dismissed the case as frivolous under 28 U.S.C. § 1915(d) (1976). Section 1915(d) applies only to cases brought *in forma pauperis. See Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir.1979). Since nothing in the record indicates that the plaintiffs were proceeding *in forma pauperis,* dismissal under § 1915(d) was improper. In addition, although the district court stated that the complaint alleged no violation of the Constitution, it is clear from the record that the court relied on material other than the pleadings in dismissing the

case. We therefore treat the dismissal as summary judgment.

**3.** In *Martinez v. Aaron,* 570 F.2d 317 (10th Cir.1978), we approved a district court's order that prison officials investigate the facts surrounding a civil rights suit by inmates to construct "an administrative record ... to enable the trial court to decide ... jurisdictional issues and make a determination [of frivolity] under [28 U.S.C.] section 1915(a)." 570 F.2d at 319. The investigation is meant "to aid in determining which facts alleged in the complaint were relevant, accurate, and subject to bona fide dispute...." *Martinez v. Chavez,* 574 F.2d 1043, 1046 (10th Cir.1978). In the instant case, the district court went well beyond what we authorized in *Aaron.* It accepted the factual findings of the prison investigation despite the conflicting pleadings and affidavits. *Aaron* did not authorize the substitution of prison officials for the court as fact finders. *Cf. Collins v. Hladky,* 603 F.2d 824 (10th Cir.1979).

finding that violations of a constitutional magnitude have occurred in this matter. The complaint does not allege facts sufficient for such a finding. . . ." Record, vol. 1 at 51.

## II

■ Section 1983 "creates a species of tort liability." *Imbler v. Pachtman,* 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976). It does so, however, only for deprivations, under color of state law, of federal statutory or constitutional rights; not all state law torts are constitutional violations [4] for which section 1983 provides a remedy. *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). Accordingly, while we have held that an assault by a jailer on his prisoner can give rise to an action under section 1983, *Collins v. Hladky,* 603 F.2d 824 (10th Cir.1979), we have recognized that a prison guard's use of force against a prisoner is not always a constitutional violation, *Smith v. Iron County,* 692 F.2d 685 (10th Cir.1982). As Judge Friendly has noted for the Second Circuit,

> [c]ertainly the constitutional protection is nowhere nearly so extensive as that afforded by the common law tort action for battery, which makes actionable any intentional and unpermitted contact with the plaintiff's person or anything attached to it and practically identified with it, see Prosser, Torts § 9 (4th ed. 1971); still less is it as extensive as that afforded by the common law tort action for assault, redressing "Any act of such a nature as to excite an apprehension of battery," *id.* § 10, at 38. Although "the least touching of another in anger is a battery," *Cole v. Turner,* 6 Mod. 149, 87 Eng.Rep. 907, 90 Eng.Rep. 958 (K.B. 1704) (Holt, C.J.), it is not a violation of a constitutional right actionable under 42

U.S.C. § 1983. The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.

*Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. Employee-Officer John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973) *(footnote omitted).*

■ The eighth amendment's proscription of cruel and unusual punishment was originally envisaged as a limit on the power of the legislature to authorize sentences and on the judiciary to impose them. *Ingraham v. Wright,* 430 U.S. 651, 664–66, 97 S.Ct. 1401, 1408–10, 51 L.Ed.2d 711 (1977). Its applicability has since been expanded: "[p]rison brutality . . . is 'part of the total punishment to which the individual is being subjected for his crime and, as such, is a proper subject for Eighth Amendment scrutiny.'" *Id.* at 669, 97 S.Ct. at 1411, *quoted in Rhodes v. Chapman,* 452 U.S. 337, 345 n. 11, 101 S.Ct. 2392, 2398 n. 11, 69 L.Ed.2d 59 (1981). While the lower courts have recognized that a guard's beating an inmate may violate the eighth amendment if the beating was authorized by the guard's supervisors, they have disagreed on whether a random, unauthorized beating may do so. *Compare United States v. Georvassilis,* 498 F.2d 883, 885 (6th Cir.1974) *with George v. Evans,* 633 F.2d 413, 415–16 (5th Cir.1980) *and Johnson,* 481 F.2d at 1032. *See also* Note, *Applying the Eighth Amendment to the Use of Force Against Prison Inmates,* 60 B.U.L.Rev. 332 (1980). We believe that *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), resolves this issue.[5]

---

**4.** The assaults on the plaintiffs, if they occurred, were under color of state law. *See Monroe v. Pape,* 365 U.S. 167, 183–87, 81 S.Ct. 473, 481–84, 5 L.Ed.2d 492 (1961). The plaintiffs do not allege that they were deprived of any rights conferred by federal statute. Thus, we confine our analysis to whether the plaintiffs were deprived of any constitutional rights.

**5.** *George* relied on *Johnson,* which was decided before *Estelle* and *Ingraham.* The plaintiff in *Johnson* was a pretrial detainee to whom the cruel and unusual punishment clause does not apply. *See Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979). In addition, *Johnson* was based on the notion that an unauthorized beating by a guard

In *Estelle,* the Supreme Court held that a prison guard's deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment. *Id.* at 104–05, 97 S.Ct. at 291–92. *Estelle* did not require that the guard's acts be authorized or acquiesced in by his superiors before they can be characterized as punishment. We conclude that under *Estelle,* a prison guard's unauthorized beating of an inmate can violate the eighth amendment.

Hamstringing prison guards, however, by forbidding their use of the force necessary to maintain control of the prison not only would endanger the guards but also could subject the prisoners themselves to greater violence at the hands of their fellow inmates. That is not constitutionally necessary. A prison guard's use of force

"does not fit any ordinary concept of 'punishment.'" 481 F.2d at 1032. Justice White, in dissenting from the majority's conclusion in *Ingraham* that the cruel and unusual punishment clause protects only convicted criminals, noted that *Estelle* had expanded the eighth amendment's scope beyond narrow definitions of punishment to include "misconduct by a prison official." *Ingraham,* 430 U.S. at 688 n. 4, 97 S.Ct. at 1421 n. 4 (White, J., dissenting).

6. We arrive at a similar test by analyzing the attack as a deprivation of the inmate's liberty without due process. When sentenced to a prison term, an inmate loses the portion of his liberty interest that is inconsistent with imprisonment. In particular, he loses his liberty interest in being free from his jailer's use of force that appears reasonably necessary to maintain or restore discipline. *See Bell v. Wolfish,* 441 U.S. 520, 546–47, 99 S.Ct. 1861, 1877–78, 60 L.Ed.2d 447 (1979). However, the prisoner does not surrender his constitutional rights that can be exercised consistently with his imprisonment. *See Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Wolff v. McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974). This includes the portion of his preexisting liberty interest to be free from arbitrary, unnecessary violence perpetrated by state officials. *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.1973). However, some interferences by state actors with one's bodily integrity are not sufficiently severe to be deprivations of a constitutionally protected liberty interest. *Ingraham,* 430 U.S. at 674, 97 S.Ct. at 1414. These principles are harmonized by a test under which a jailer's attack on a prisoner deprives the prisoner of a constitutionally protected liberty interest when the attack consists of force intended to harm

against an inmate is "cruel and unusual" only if it involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976). We think that this standard imposes three requirements for an inmate to state a cause of action under the eighth amendment and section 1983 for an attack by a prison guard. First, "wanton" requires that the guard have intended to harm the inmate. Second, "unnecessary" requires the force used to have been more than appeared reasonably necessary at the time of the use of force to maintain or restore discipline. Third, "pain" means more than momentary discomfort; the attack must have resulted in either severe pain or a lasting injury.[6] In applying this test,

the inmate that was greater than appeared reasonably necessary at the time to maintain or restore discipline and that caused either severe pain or a lasting injury.

There are two differences between the cruel and unusual punishment and procedural liberty interest analyses. First, while our eighth amendment test requires an intent to harm, any intent requirement might be weaker under a liberty interest analysis since the Supreme Court has never decided whether a state actor's negligent act can cause a deprivation of liberty. *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). *But cf. Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (state actor's negligence can constitute deprivation of property). This issue does not affect the outcome of this case.

In addition, the eighth amendment, although applicable to the states through the fourteenth amendment's due process clause, confers a substantive right. It proscribes the infliction of cruel and unusual punishment regardless of any pre- or postdeprivation procedure that the state provides. *See id.* at 545, 101 S.Ct. at 1918 (Blackmun, J. concurring); *id.* at 552–53, 101 S.Ct. at 1921–22 (Powell, J., concurring).

[T]he availability of state remedies has never been determinative of the coverage or of the protections afforded by the Eighth Amendment. The reason is obvious. The fact that a person may have a state-law cause of action against a public official who tortures him with a thumbscrew for the commission of an antisocial act has nothing to do with the fact that [the] ... conduct is cruel and unusual punishment prohibited by the Eighth Amendment.

*Ingraham,* 430 U.S. at 690–91, 97 S.Ct. at 1422–23 (White, J., dissenting). *See also Wolf-Lillie*

a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *Johnson,* 481 F.2d at 1033. A court should also bear in mind that a prison guard, to maintain control of inmates, must often make instantaneous, on-the-spot decisions concerning the need to apply force without having to second-guess himself. *See Wolff v. McDonnell,* 418 U.S. 539, 566–67, 94 S.Ct. 2963, 2979–80, 41 L.Ed.2d 935 (1974).

■ In the instant case, the complaint and affidavits allege that Mr. Ruettgers intentionally attacked Mr. Sampley, that the attack was unprovoked, and that Mr. Sampley suffered "severe pain" from being kneed in the groin and had an inch deep stab wound. Mr. Sampley's complaint and affidavits—about whose truthfulness we make no judgment—thus satisfies the test formulated above. Since the affidavits leave disputed a material question of fact, the trial court erred in granting summary judgment against Mr. Sampley.

■ Mr. Martinez, on the other hand, has not alleged that he suffered any pain or severe injury from Mr. Ruettgers' spitting on the hair clippers and pushing him. While these acts might be torts actionable under Wyoming law, they were neither cruel and unusual punishment as defined by the test we have adopted today nor a deprivation of Mr. Martinez's constitutionally protected liberty interest.

Reversed as to Mr. Sampley; affirmed as to Mr. Martinez.

*v. Sonquist,* 699 F.2d 864 (7th Cir.1983). On the other hand, it is not settled whether a postdeprivation state remedy can provide due process for a liberty deprivation that does not violate a substantive interest conferred by the Bill of Rights. *Compare Parratt v. Taylor,* 451 U.S. 527, 545–54, 101 S.Ct. 1908, 1918–22, 68 L.Ed.2d 420 (1981) (concurring opinions of

White, Blackmun, and Powell, JJ.) *with Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). *See also Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436 n. 10, 102 S.Ct. 1148, 1158 n. 10, 71 L.Ed.2d 265 (1982); *The Supreme Court, 1981 Term,* 96 Harv.L.Rev. 62, 101 n. 33 (1982).