Cecil D. SLAYTON, Plaintiff-Appellant,

v.

David WILLINGHAM, Larry Hignight, Bill Cully, City of Ardmore, Oklahoma, Defendants-Appellees.

No. 82–2109.

United States Court of Appeals, Tenth Circuit.

Jan. 27, 1984.

Cecil D. Slayton, pro se.

Joseph A. Sharp, Jack M. Thomas, and Walter D. Haskins of Best, Sharp, Thomas, Glass & Atkinson, Tulsa, Okl., for defendants-appellees.

Before SETH, Chief Judge, and McKAY and LOGAN, Circuit Judges.

PER CURIAM.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Cecil Slayton appeals from summary judgment in his civil rights suit. *See* Fed. R.Civ.P. 12(b)(6) and 56. He brought this suit under section 1983 [1] after pleading *nolo contendere* to a criminal charge in an Oklahoma state court. Mr. Slayton alleged that members of the Ardmore, Oklahoma police department violated his constitutional rights while conducting the investigation that led to his conviction. He claimed that defendants Willingham and Hignight, policemen from Ardmore, had violated his fourth and fourteenth amendment rights by illegally arresting him twice and illegally searching him or his car on three occasions. He also alleged that defendants Willingham and Hignight violated his eighth amendment rights by severely beating him after one of his arrests. His final claim was that defendant Bill Cully, the Ardmore Chief of Police, violated his constitutional right to privacy by obtaining private, personal photos of Mr. Slayton and showing them to some of Mr. Slayton's acquaintances. Mr. Slayton asserted that Mr. Cully and the City of Ardmore were liable on all of his claims since both officially acquiesced in the alleged constitutional violations.

The district court dismissed Mr. Slayton's suit. The court held that the claims for the searches, the arrests, and the beatings had to be dismissed since they "seek to reopen ... issues which should have been heard at trial." *Slayton v. Willingham,* No. 82–166–C, slip op. at 2 (E.D.Okl. Sept. 3, 1982). The court also held that the handling of the

---

1. Section 1983 provides in part that
   [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
   42 U.S.C. § 1983 (Supp. IV 1980).

photographs violated no constitutional privacy right. Finally, the court held that Mr. Slayton's only remedy for the allegedly illegal searches and arrests was a petition for habeas corpus rather than an action under section 1983. Since this is an appeal from summary judgment, we construe the record most favorably to Mr. Slayton's case. *McKee v. Heggy,* 703 F.2d 479 (10th Cir. 1983).

## I. *Res Judicata*

The district court held that Mr. Slayton's claims predicated on the illegal searches and arrests and the beating were barred since Mr. Slayton should have asserted them at his state criminal proceeding, in which he pleaded *nolo contendere.* The trial court thus applied the doctrine of res judicata to find the section 1983 claim barred by the prior state proceeding.[2]

In *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court held that a state criminal court's finding that a search was legal collaterally estops the criminal defendant, as a plaintiff in a subsequent section 1983 suit, from asserting the search's illegality, so long as he had a "full and fair opportunity" to litigate the issue at the state criminal trial. 449 U.S. at 95, 101 S.Ct. at 415. The Court in *Allen* did not decide, however, how to determine the applicability of collateral estoppel to a particular case. *Id.* at 93 n. 2, 105 n. 25, 101 S.Ct. at 414 n. 2, 420 n. 25.

The Court clarified *Allen* in *Haring v. Prosise,* —— U.S. ——, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983). In *Haring,* a criminal defendant pleaded guilty in state court and then brought a section 1983 action based on an allegedly illegal search that had led to the state criminal proceedings. The Court held that the plaintiff's guilty plea did not bar his section 1983 action. Under *Haring,* 28 U.S.C. § 1738 (1976)[3] renders state preclusion doctrine presumptively applicable to a section 1983 suit brought by a former state criminal defendant, subject to a federal due process qualification that state law can preclude only issues that the section 1983 plaintiff had a "full and fair opportunity to litigate" in the state proceeding.[4] Thus, in determining whether Mr. Slayton's *nolo contendere* plea to a criminal charge in Oklahoma state court precludes him from raising material questions of fact with respect to his claims based on the searches, the arrests, and the beating, we must first look to Oklahoma preclusion law.

Under the doctrine of res judicata, or claim preclusion, a plaintiff who loses a lawsuit is barred from bringing a later suit based on the same "cause of action" as the first. *E.g., Meyer v. Vance,* 406 P.2d 996, 1001–02 (Okl.1965). Under collateral and direct estoppel, or issue preclusion, a litigant in one lawsuit may not, in a later lawsuit, assert the contrary of issues actually decided in and necessary to the judgment of the first suit. *Id. See also Searing v. Hayes,* 684 F.2d 694, 696 (10th Cir.1982); *see generally* 18 Wright, Miller & Cooper, Federal Practice and Procedure §§ 4402, 4406, 4416 (1981) (hereinafter "Wright and Miller").[5] Since a section 1983 plaintiff's civil suit is not the same "cause of action" as the state's criminal case against the plaintiff, res judicata is inapposite. 18

2. In fact, the trial court appears to have treated Mr. Slayton's civil rights claims as compulsory counterclaims in his state criminal proceeding. Since there is no authority, precedential or logical, for such a characterization of a § 1983 case, we shall analyze the problem as one of res judicata and collateral estoppel.

3. Section 1738 provides that "[t]he ... judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State." 28 U.S.C. § 1738 (1976).

4. The Court in *Haring* noted some other exceptions under which a federal suit would not be barred even though an application of state law would preclude it. *See Haring,* —— U.S. at —— & n. 7, 103 S.Ct. at 2373 & n. 7. Our interpretation of Oklahoma preclusion law renders it unnecessary for us to discuss the "full and fair opportunity to litigate" requirement and the other exceptions. *See Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982).

5. There are other necessary conditions for issue preclusion that are not relevant to this case. *See generally* 18 Wright and Miller § 4416.

Wright and Miller, § 4474, at 748–49. Thus, Mr. Slayton's criminal proceeding can preclude his civil rights action, if at all, only through the application of collateral estoppel. The trial court's summary judgment on the basis of Mr. Slayton's *nolo contendere* plea in Oklahoma state court can therefore be upheld only if the constitutionality of the searches, arrests, and beating were necessary for the judgment of the Oklahoma court and actually determined against Mr. Slayton in its proceeding.

Under Oklahoma law, a *nolo contendere* plea has the same effect as a guilty plea for the charge for which it is entered. Okla. Stat.Ann. tit. 22 § 513 (West Supp.1982–1983). It differs, however, in that it cannot be introduced as evidence against the defendant in a subsequent civil proceeding "based upon, or growing out of the act upon which the criminal prosecution is based." *Id.* A section 1983 suit for an illegal search is based on the search, not on acts committed by the section 1983 plaintiff on which his state criminal prosecution was based. In addition, the Oklahoma courts have not yet decided whether a civil suit based on an illegal search is "growing out" of the civil plaintiff's allegedly criminal acts. We shall therefore consider whether this case can be decided on settled Oklahoma law on the preclusive effect of guilty pleas.

A criminal defendant who pleads guilty waives all "nonjurisdictional" challenges to his conviction. *Ledgerwood v. State,* 455 P.2d 745 (Okl.Cr.App.1969). Some courts have leapt from this doctrine to conclude that a defendant who pleads guilty is collaterally estopped, in a subsequent civil rights suit, from making any nonjurisdictional claim that might have prevented his conviction had he gone to trial. *See, e.g., Hooper v. Guthrie,* 390 F.Supp. 1327 (W.D.Pa.1975). We think this is a *non sequitur.* When a criminal defendant pleads guilty in Oklahoma, he admits all of the elements of the crime with which he is charged. His admission is the evidence that convicts him. *Ledgerwood,* 455 P.2d at 747. Illegally seized evidence that might have been used against him does not enter the case. *Id.* He cannot challenge the conviction based on his guilty plea by challenging the legality of a search since the search is simply irrelevant to his conviction. His inability to challenge the conviction by challenging the search has nothing to do with his later assertion in a civil suit that the search was unconstitutional. The issue cannot be precluded since it was neither necessary to nor actually decided by the state court's judgment based on the guilty plea.[6] Thus, the trial court erred in dismissing Mr. Slayton's claims for the arrests, searches, and beating[7] on the basis of the Oklahoma criminal proceedings against him.

**6.** Nothing in the record indicates that Mr. Slayton went to trial and lost a fourth amendment issue before pleading *nolo contendere.* Even if he did, *Searing v. Hayes,* 684 F.2d 694 (10th Cir.1982), which involved *actual* litigation of a fourth amendment claim, would not govern since it did not involve Oklahoma law. The decision in such a case would have to conform to *Ledgerwood.* In *Ledgerwood,* a criminal defendant lost a fourth amendment suppression motion. He then entered a guilty plea. Oklahoma's highest criminal court held that he could not appeal his conviction on the basis of the allegedly illegal search. The court held that the conviction "is the result of the plea and not the evidence theretofore obtained." 455 P.2d at 747 (quoting *Mahler v. United States,* 333 F.2d 472 (10th Cir.1964), *cert. denied,* 379 U.S. 993, 85 S.Ct. 709, 13 L.Ed.2d 613 (1965)). This implies that although the trial court actually decided that the search was legal, the resolution of the search issue was not necessary to the conviction. Since a decided issue must

have been necessary to a prior judgment to have collateral estoppel effect, *Ledgerwood* suggests that, at least in Oklahoma, a trial court's denial of a fourth amendment suppression motion followed by a guilty plea does not collaterally estop the criminal defendant's later allegation in a section 1983 suit that the search was illegal.

**7.** Regardless of our issue preclusion analysis with respect to the searches and arrests, we see no basis on which Mr. Slayton could have challenged the beating in a criminal trial since there is no evidence that his plea or any other damaging evidence resulted from the beating. Since the trial court did not discuss the beating, it would be necessary for us to reverse on that issue alone.

Mr. Slayton claims that the alleged beating violated the eighth amendment. Since Mr. Slayton was not serving a sentence for a criminal conviction at the time of the beating, the

## II. *Privacy Claim*

Mr. Slayton alleged that the defendants had violated his constitutional right to privacy. He claimed that the Ardmore Police Department had obtained photographs of Mr. Slayton "of a highly sensitive, personal, and private nature" from the police department of Gainesville, Texas. The Gainesville police had previously seized the pictures in what a Gainesville judge had ruled to be an illegal search. The defendants, Mr. Slayton claims, violated his right to privacy by showing the pictures to a number of Mr. Slayton's acquaintances in Oklahoma. The district court dismissed this claim on the basis of *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

We think that the district court misapplied *Paul v. Davis.* That case held that publicity that damaged the plaintiff's reputation and no more was neither a deprivation of his fourteenth amendment liberty interest nor a violation of his constitutional right to privacy. 424 U.S. at 712–13, 96 S.Ct. at 1165–66. Since *Paul v. Davis,* however, the Supreme Court has explicitly recognized that the constitutional right to privacy encompasses an "individual interest in avoiding disclosure of personal matters." *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977) (footnote omitted); *Nixon v. Administrator of General Services,* 433 U.S. 425, 457, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977).

■ Mr. Slayton's allegation that the defendants exhibited his "highly sensitive, personal, and private" photographs claims a disclosure of personal matters rather than mere damage to his reputation. The trial court erred in relying on *Paul v. Davis* to dismiss this claim. Beyond this, we express no opinion on the merits of Mr. Slayton's privacy claims since neither the pictures nor any indication of the circumstances in which they were shown is in the record.

We note, however, that Mr. Slayton's constitutional privacy right was not violated unless (a) he had a legitimate expectation of privacy in the photos, and (b) his privacy interest outweighed the public need for their disclosure. *See Nixon,* 433 U.S. at 465–66, 97 S.Ct. at 2801–02.

## III. *Remedy*

■ The trial court erred in holding that Mr. Slayton's only remedy for the illegal search and arrest claims was to apply for habeas corpus. Although section 1983 cannot be invoked by a state prisoner for a release from or reduction of his confinement, it is an appropriate remedy for a claim for money damages for a violation of any constitutional right under color of state law, *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), including unconstitutional searches and seizures.

■ The district court properly denied Mr. Slayton's claim for punitive damages against the City of Ardmore. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Since the court did not otherwise discuss Mr. Cully's or Ardmore's liability, we leave those issues for remand. We note that while there is no *respondeat superior* liability under section 1983, a *pro se* plaintiff's repeated invocation of that phrase should not deter the court from examining the substance of the complaint to determine whether alleged constitutional violations were sanctioned by official policy.

We have viewed the record in a light most favorable to Mr. Slayton since he appeals from summary judgment. However, we express no opinion on the merits of his claims, and we do not preclude the possibility of summary judgment on remand.

The judgment of the district court is affirmed insofar as it denies Mr. Slayton's

eighth amendment is inapplicable. *See Sampley v. Ruettgers,* 704 F.2d 491 (10th Cir.1983). However, viewing Mr. Slayton's complaint with the liberality we must accord a *pro se* plaintiff, we note that he might have alleged that the beating was a deprivation of liberty without due process. We have recognized that a beating may, in some circumstances, constitute such a deprivation. *See Sampley, id.* at 495 & n. 6. A *pro se* litigant's mere citation of the wrong constitutional amendment does not preclude his cause of action so long as the facts he alleges state a claim under an obviously applicable constitutional provision.

claim for punitive damages from the City of Ardmore and reversed and remanded as to the rest.