Dianne HART, Plaintiff,

v.

CLEARFIELD CITY, DAVIS COUNTY, Political Subdivisions within the State of Utah, Bonnie Kagan, Shelley Campbell, Karen Wright, and John Does I through V, Defendants.

Civ. No. 91–NC–46B.

United States District Court,
D. Utah, N.D.

March 4, 1993.

Michael G. Belnap, Ogden, UT, for plaintiff.

Allan L. Larson and Anne Swensen, Salt Lake City, UT; Gerald E. Hess and Melvin C. Wilson, Farmington, UT, for defendants.

BENSON, District Judge.

On February 10, 1992, a hearing was held before the Honorable Dee Benson on the defendants' Motions for Summary Judgment. Michael Gary Belnap represented plaintiff Dianne Hart. Anne Swensen represented defendants Clearfield City, Bonnie Kagan, and Shelley Campbell. Gerald E. Hess represented defendants Davis County and Karen Wright.

Having reviewed the memoranda submitted by the parties, having heard oral argument from counsel, and being fully apprised, the Court enters the following Memorandum Decision and Order.

## I. BACKGROUND

The plaintiff, Dianne Hart, was employed as a dispatcher for Clearfield City, Utah. Clearfield City is located in Davis County. The Clearfield City dispatch center has a high level of interaction with the Davis County dispatch center. Ms. Hart became friendly with Linda Bone, a dispatcher at the Davis County dispatch center.

Prior to February 28, 1990, Ms. Hart had a conversation with one of her co-workers, Shelley Campbell, who was also a dispatcher for Clearfield City. During the conversation, Ms. Campbell shared with Ms. Hart certain personal matters, including Ms. Campbell's concerns about her husband's fidelity to their marriage.

On February 28, 1990, Ms. Bone called Ms. Hart while Ms. Hart was on-duty at the Clearfield City dispatch center. Because the call came into the center on a recorded line, Ms. Hart transferred the call to a line she believed was unrecorded.[1] In fact, the phone line was recorded. During their conversation, Ms. Bone and Ms. Hart discussed Ms. Campbell and her husband. Among other things, they discussed in some detail Ms. Campbell's concerns about her husband's fidelity, and information about Mr. Campbell's past conduct. The conversation between Ms. Hart and Ms. Bone ended rather abruptly because of an incoming call to the Clearfield City dispatch center regarding an incident at the Clearfield Job Corps center.

Later that same evening, at 11:00 p.m., Ms. Campbell started her shift at the time Ms. Hart was ending hers. At approximately 3:30 a.m., Sergeant Reed Mecham of the Clearfield City Police Department asked Ms. Campbell to play back the tape of the call from the previous shift regarding the Job Corps center.[2] Pursuant to Sgt. Mecham's request, Ms. Campbell attempted to locate the Job Corps call and in doing so inadvertently heard part of the conversation between Ms. Bone and Ms. Hart in which references to herself and her husband naturally caught her attention. She listened to the entire conversation. Ms. Campbell became so distressed after hearing the telephone call that she called Tami Allen, another Clearfield dispatcher, to relieve her.

As a result of the February 28 call Ms. Hart met with her supervisor, Bonnie Kagan, on March 3, and was given a verbal warning not to repeat such behavior. In addition, Ms. Kagan told Ms. Hart she should not have personal conversations with Ms. Bone while Ms. Hart was on duty. Larry Waggoner, the Clearfield City Attorney, later told Ms. Hart that she could talk to whomever she wanted so long as she conformed to the dispatch center's rules regarding personal phone calls.

1. Ms. Hart believed that the line was unrecorded because an earlier test of the recording equipment revealed that the equipment did not appear to record that particular line. Ms. Hart had received no assurance from her employer that the line was not recorded.

2. Ms. Hart acknowledged that Clearfield City has a policy regarding the playback of any tape. Specifically, a supervising officer must request that a tape be played back. In this instance, Sgt. Mecham was Ms. Campbell's supervising officer.

After the February 28 call, Ms. Campbell continued to monitor Ms. Hart's personal calls, in violation of Clearfield City policy.[3] Ms. Hart suspected that Ms. Campbell was monitoring her calls. On March 16, 1990, Ms. Hart, from her home, telephoned Ms. Bone at the Davis County dispatch center. Ms. Hart called Ms. Bone on what both of them knew was a recorded line. During their conversation, Ms. Hart and Ms. Bone discussed a scheme to set up Ms. Campbell in such a way that Ms. Campbell would be compelled to admit to her supervisors she had been listening to Ms. Hart's tapes. Ms. Hart and Ms. Bone discussed staging a recorded conversation during which they would state that they had seen Ms. Campbell's husband with a cute blonde woman at a local motel.

During this same time period, Karen Wright, Ms. Bone's supervisor, had received numerous complaints about the length of Ms. Bone's personal calls. Ms. Wright played some of the Davis County tapes to determine the length of Ms. Bone's personal calls. During this process, Ms. Wright discovered the March 16 call between Ms. Hart and Ms. Bone. Ms. Wright was concerned that Ms. Hart's and Ms. Bone's scheme would disrupt the workings of the Clearfield City dispatch center. Therefore, Ms. Wright discussed the matter with her supervisors and was instructed to contact the Clearfield City dispatch supervisor.

On March 23, 1990, Ms. Wright and her supervisor, Sergeant Anderson, met with Ms. Kagan and Mr. Waggoner. They shared information about the February 28 and March 16 calls.

On April 5, 1990, Ms. Kagan met with Ms. Hart and told Ms. Hart that if she followed through with her plan to "set up" Shelley Campbell, Clearfield City would take appropriate action. On April 6, 1990, Ms. Hart resigned. In her resignation letter addressed to Mr. Waggoner, she stated she had been alienated from her fellow workers and

Ms. Kagan had unjustly verbally reprimanded her and revoked her civil rights.

In her suit, Ms. Hart asserts several claims. She brings an action for Clearfield City's and Davis County's violation of her right to privacy; and Clearfield City's alleged constructive termination of her employment, defamation, illegal interference with contractual relationships, and intentional infliction of emotional distress.[4] Ms. Hart bases her claims on 42 U.S.C. section 1983. The defendants moved for summary judgment, asserting that neither the law nor the undisputed facts support the allegations made by Ms. Hart.

## II. STANDARD OF REVIEW

The United States Supreme Court has established the applicable standard for deciding motions for summary judgment. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Court stated:

> [T]he trial judge shall ... grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. There is no requirement that the trial judge make findings of fact. The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Id.* at 249–50, 106 S.Ct. at 2511. In addition, although a court must consider all of the opposing party's evidence as true, and draw all reasonable inferences therefrom, the opposing party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts supported by depositions, affidavits, admissions on file, and answers to interrogatories. *Id.* at 248–49, 106 S.Ct. at 2510–11.

---

3. Ms. Hart conceded that Ms. Campbell never disclosed the contents of the conversations to anyone, and that Ms. Hart did not suffer any damage as a result of Ms. Campbell's actions.

4. Ms. Hart's claims with respect to emotional distress were dismissed in an Order stipulated to by the parties and signed by the Court on August 7, 1992.

## III. DISCUSSION

As a basis for a number of her claims, Ms. Hart alleges that Clearfield City and Davis County violated her rights pursuant to 42 U.S.C. section 1983. To prevail on such a claim, Ms. Hart must "allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988).

### A. *Right to Privacy:*

■ Ms. Hart asserts that Bonnie Kagan deprived her of her right to privacy by discussing the content of her February 28 phone call with other employees, and that Clearfield City deprived Ms. Hart of the same right by failing to take steps to prevent Shelley Campbell from monitoring her phone calls. In addition, Ms. Hart avers that Karen Wright violated her right to privacy by monitoring the March 16 phone call between Ms. Hart and Ms. Bone, and by disclosing its contents to her supervisors at Davis County.

In *Slayton v. Willingham*, 726 F.2d 631 (10th Cir.1984), the United States Court of Appeals for the Tenth Circuit established the standard for determining whether an individual's right to privacy has been violated. The *Slayton* court held that the right to privacy is not violated unless: (1) a person had a legitimate expectation of privacy [5] and (2) a person's privacy interest outweighed the public need for disclosure. *Id.* at 635.

In the instant case, the Court finds as a matter of law from the undisputed facts that Ms. Hart cannot satisfy either prong of the *Slayton* test. Even if all of the facts as stated by Ms. Hart are accepted as true, Ms. Hart had no reasonable expectation of privacy with respect to either the February 28 or March 16 telephone call. Although Ms. Hart asserts that she believed the telephone line on which she received the February 28 call

was unrecorded because the recording equipment previously had been tested and did not appear to work on that particular line, such a belief did not give Ms. Hart a reasonable expectation of privacy. Ms. Hart worked as a dispatcher in a center where telephone calls were routinely recorded. As a dispatcher, Ms. Hart held a sensitive position. At the dispatch center critical issues were discussed on the telephone. Telephone calls frequently needed to be reviewed for business purposes. It was through one of these specific instances when Ms. Hart's February 28 call was discovered by happenstance. Given the nature of Ms. Hart's employment and work environment, and given that telephone calls were routinely reviewed, the Court finds that Ms. Hart did not have a reasonable expectation of privacy.

■ Moreover, even assuming that Ms. Hart had a reasonable expectation of privacy with respect to the February 28 call, Ms. Hart fails to meet the second prong of the *Slayton* test; namely, her right to privacy did not outweigh the public interest involved in this matter. Because the content of the conversation could adversely affect the working conditions in the dispatch center by lowering employee morale and creating uncomfortable relations between employees, and given the sensitive nature of the employment and its vital service to the public, once Clearfield City inadvertently became aware of the content of the telephone call it had an obligation to its employees and the public to attempt to defuse the situation and prevent its recurrence.

■ Ms. Hart also did not have a reasonable expectation of privacy with regard to her March 16 telephone call. That call was made on a telephone line that Ms. Hart knew was recorded, and Ms. Hart declined to have the call transferred to an unrecorded line when she and Ms. Bone both knew an unrecorded line was available. Thus, Ms. Hart cannot satisfy the first prong of the *Slayton*

---

5. With respect to the first prong of the *Slayton* test, whether an individual's expectation is "legitimate" or reasonable, the United States Supreme Court has stated that such a determination is based on "whether the individual, by his conduct, has 'exhibited' an actual (subjective) expectation of privacy,' [and] whether . . . the individual's subjective expectation of privacy is 'one that

society is prepared to recognize as "reasonable." ' " *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979) (citing *Katz v. United States*, 389 U.S. 347, 353, 361, 88 S.Ct. 507, 512, 516, 19 L.Ed.2d 576 (1967)); *see also O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (discussing the standard of reasonableness).

test as to the March 16 call. In addition, Ms. Wright was properly concerned that if she didn't disclose the information to Clearfield City the public and Clearfield City police might be placed at risk as a result of the scheme discussed by Ms. Bone and Ms. Hart. Public interest in the unhindered operation of the Clearfield City dispatch center certainly justifies the limited disclosure of the March 16 call by Davis County officials to Clearfield City officials and outweighs any right of privacy claimed by Ms. Hart.

### B.  *First Amendment Rights:*

■ Ms. Hart argues that both Clearfield City and Davis County infringed upon her First Amendment rights. Specifically, Ms. Hart states that Ms. Kagan told her she could not have any contact with Linda Bone during work hours. Clearfield City acknowledges that Ms. Kagan told Ms. Hart she could not contact Ms. Bone while on duty. Clearfield City points out, however, that the edict was short-lived as Mr. Waggoner later told Ms. Hart that she could talk to whomever she wished. Davis County argues that it didn't infringe on Ms. Hart's First Amendment rights because it had no authority to limit the individuals with whom she could converse while on the job, and therefore never attempted to do so.

■ The Court finds that Clearfield City, Ms. Kagan, Davis County, and Ms. Wright did not violate Ms. Hart's First Amendment rights. The Court agrees with Davis County that it had absolutely no ability and made no attempt to infringe on Ms. Hart's rights of association and free speech. In addition, Clearfield City's actions did not violate Ms. Hart's First Amendment rights. Ms. Kagan was justified in demanding that Ms. Hart not contact Linda Bone during working hours. Ms. Hart's contact with Ms. Bone had caused a disruption in the Clearfield City dispatch center. As a supervisor, Ms. Kagan was concerned about the welfare of the entire staff and it was not unreasonable for Ms. Kagan to demand that Ms. Hart sacrifice her contact with Ms. Bone during working hours for the benefit of the morale of the entire office. Moreover, Ms. Kagan did not attempt to sever Ms. Hart's contact with Ms. Bone entirely, but merely during the time she spent in the employ of Clearfield City.

In an abundance of caution the city attorney revoked Ms. Kagan's order, but he need not have done so for constitutional purposes. The Constitution does not prevent a public employer from making reasonable demands of its employees during business hours in an attempt to perform its work in an efficient, effective manner. Had Ms. Kagan attempted to limit Ms. Hart's contact outside of the work place, there may have been a violation of Ms. Hart's constitutional rights, but this did not occur.

■ In their memoranda, the defendants assert that Bonnie Kagan and Karen Wright are exempt from liability under the doctrine of qualified immunity. Qualified immunity is a question of law. *See Snell v. Tunnell,* 920 F.2d 673, 696–97 (10th Cir.1990). The Tenth Circuit has determined that once the defense of qualified immunity is raised, the plaintiff must prove that the "[d]efendant's alleged conduct violated the law and the law was clearly established when the violation occurred." *Pueblo Neighborhood Health Centers v. Losavio,* 847 F.2d 642, 646 (10th Cir. 1988).

■ In the present case, as has been noted by the Court, neither Ms. Kagan nor Ms. Wright violated any law that was in existence at the time they committed the acts Ms. Hart has complained of. Therefore, the Court need not focus on this defense. However, assuming that laws existed that were violated, the laws were not clearly established at the time the alleged violations occurred. Thus, were it necessary for the defendants to rely on this defense, Ms. Kagan and Ms. Wright would be entitled to qualified immunity. In addition, Shelley Campbell, to the extent she was found to be acting under color of law, would be entitled to qualified immunity with respect to her initial interception of the February 28 call.

### C.  *Constructive Discharge:*

■ Ms. Hart alleges that the working environment at the Clearfield City dispatch center became so intolerable as a result of statements made by her supervisors to the other employees, the pressure that Ms. Kagan applied to her, and the fact that Ms. Campbell allegedly was permitted to continue monitoring her calls, that she was forced

to resign. The issue of constructive discharge is ordinarily a question of fact. *See e.g., Nolan v. Cleland,* 686 F.2d 806, 812–15 (9th Cir.1982) (summary judgment was improper on the issue of constructive discharge). However, it may be decided on summary judgment. *See e.g., Martin v. Citibank, N.A.,* 762 F.2d 212, 221 (2d Cir.1985) (upholding District Court's dismissal of constructive discharge claim where "[i]n this case the evidence was insufficient as a matter of law to establish constructive discharge").

The Tenth Circuit has clarified the legal standard for constructive discharge: "[T]he question on which constructive discharge cases turn is simply whether the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 344 (10th Cir.1986). Based on the standard established in the *Derr* case, and accepting the facts Ms. Hart cites as true, as a matter of law Ms. Hart cannot prevail on a claim of constructive discharge against Clearfield City. First, as the Court articulated above, Clearfield City did not engage in any "illegal discriminatory acts" against Ms. Hart. Second, based on the record presented by Ms. Hart, the Court does not find that a "reasonable person" in Ms. Hart's position would have felt compelled to resign.

## IV. CONCLUSION

Even if all of the facts as stated by Ms. Hart are accepted as true, Ms. Hart did not have a reasonable expectation of privacy. Moreover, even if Ms. Hart did have a reasonable expectation of privacy, it did not outweigh the public need for disclosure where the initial discovery of the February 28 call was as the result of a legitimate review of the tape. In addition, Ms. Hart knew the March 16 call was on a recorded line and therefore had no reasonable expectation of privacy. As a matter of law, the Court finds in favor of the defendants on Ms. Hart's right to privacy claims.

With respect to all other claims Ms. Hart asserts against Clearfield City and Bonnie Kagan, the Court resolves such claims in favor of the defendants as a matter of law. In addition, the Court finds in favor of defen-

dant Shelley Campbell as Ms. Hart has not cited any facts to demonstrate that Shelley Campbell acted under color of state law by monitoring Ms. Hart's telephone calls after February 28, 1990, and Ms. Hart has not alleged that she was harmed in any way as a result of Ms. Campbell's monitoring of her telephone calls.

With respect to the claims Ms. Hart asserted against Davis County and Karen Wright, the Court also resolves such claims in favor of the defendants as a matter of law. As mentioned above, Ms. Hart had no reasonable expectation of privacy in the March 16 telephone call. Indeed, Ms. Wright had a clear business purpose in monitoring the call.

Finally, the Court will not exercise its pendent jurisdiction with respect to the state claims. Therefore, Ms. Hart's claims against Clearfield City for breach of contract, defamation, illegal interference with economic relations, and punitive damages are dismissed without prejudice. Accordingly,

The defendants' Motions for Summary Judgment are hereby GRANTED. Judgment shall be and is hereby directed to be entered in favor of all defendants.

IT IS HEREBY ORDERED.