**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 9, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CHRISTOPHER E. THOMPSON,

    Thompson - Appellant,

v.

OLUWATOSIN ORUNSOLU; MARIA
BOS; TIM SMITH; DAN SCHNURR;
JOE NORWOOD,

    Defendants - Appellees.

No. 19-3004
(D.C. No. 5:17-CV-03203-HLT-KGG)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **EID**, Circuit Judges.
_____

Christopher Thompson, a Kansas inmate appearing pro se,[1] commenced this

action under 42 U.S.C. § 1983 against various officials with the Kansas Department

of Corrections (KDOC). The district court granted summary judgment for the

defendants. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] "Because [Thompson] is pro se, we liberally construe his filings, but we will
not act as his advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

## BACKGROUND

On July 2, 2017, KDOC Correctional Officers Oluwatosin Orunsolu and Samantha Higbee were distributing meal trays to inmates in the El Dorado Correctional Facility (EDCF). When Orunsolu and Higbee approached Thompson's cell, Thompson and his cellmate, Terry Fine, were standing at the door. Fine reached through the food slot and grabbed Orunsolu. After Fine resisted orders to step back, Orunsolu deployed a two- to three-second burst of pepper spray through the food slot and into the cell, striking Fine in his midsection. The parties dispute whether Thompson also was attempting to grab Orunsolu. But they agree Thompson was at the back of the cell and no longer near the food slot when Orunsolu deployed the pepper spray—either because, as the defendants alleged, he ran to the back of the cell upon realizing Orunsolu intended to use pepper spray or because, as Thompson alleges, he had already received his meal and was sitting on his top bunk.

Immediately following the incident, Thompson and Fine were removed from the cell, taken to the showers for decontamination, and checked by medical staff. Thompson did not display or report any injuries. However, in a medical request eighteen days later, he alleged his exposure to pepper spray on July 2 caused him to fall out of his bunk and hurt his lower back. Medical staff scheduled an appointment for him for the following day, but Thompson refused to attend.

Over the next seven weeks, Thompson submitted numerous medical requests, none of which referenced back pain or the July 2 incident. It was not until a medical examination on September 8 that Thompson renewed his complaint about back pain

2

or his allegation about falling from his bed. During this examination, Thompson evidenced no gait dysfunction or radiation of pain to his lower extremities. On October 2, Thompson returned to the clinic, complaining of back pain stemming from an incident he said occurred "[a]pproximately one month" prior. R. Vol. 2 at 87. During this examination, Thompson again denied having pain radiating to his lower extremities, and he exhibited a normal range of motion. He also was able to walk into the office and get on and off the exam table without assistance. Over the next few months, Thompson returned to the clinic multiple times for alleged back pain. He also filed a personal injury claim, which KDOC denied.

In connection with the July 2 incident, both Thompson and Fine received disciplinary reports charging them with battery and were placed in segregation. KDOC found Fine guilty of battery for grabbing Orunsolu but dismissed Thompson's charge following a hearing on July 10. Thompson then sought to be removed from segregation, but he was kept in segregation after officials "review[ed] [his] disciplinary history" and "observ[ed] his behavior." R. Vol. 1 at 34.

Thereafter, Thompson filed an action against the defendants in their individual capacities, claiming: (1) Orunsolu used excessive force in violation of the Eighth Amendment; and (2) the other defendants violated his due process rights under the Fourteenth Amendment by keeping him in segregation after the disciplinary report was dismissed. The district court granted defendants' motion for summary judgment based on qualified immunity, finding Thompson failed to show either a constitutional violation or clearly established law for either claim. Thompson timely appealed.

3

## DISCUSSION

### I.    Standard of Review

"We review the district court's grant of qualified immunity on summary judgment de novo." *Nelson v. McMullen*, 207 F.3d 1202, 1205 (10th Cir. 2000).  To overcome a qualified immunity defense at the summary judgment phase, a plaintiff must show: "(1) that the defendant violated his constitutional . . . right[], and (2) that the constitutional right was clearly established at the time of the alleged unlawful activity," such that "every reasonable official would have understood that what he is doing violates that right." *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016) (internal quotation marks omitted).  The latter "inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks and citation omitted).  "If, and only if, plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018) (internal quotation marks omitted).

### II.    Analysis

#### A. Eighth Amendment Claim

Thompson first contends the district court erred in granting summary judgment to Orunsolu on his Eighth Amendment excessive-force claim.  We disagree.

"[C]laims of excessive force involving convicted prisoners arise under the Eighth Amendment." *Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014). But not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Rather, an inmate must satisfy "(1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind," such that the officials used the "force maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline." *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) (internal quotation marks omitted). Relevant factors include: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates"; and (5) "any efforts made to temper the severity of a forceful response." *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (internal quotation marks omitted).

In assessing excessive-force claims, we have recognized that "a prison guard, to maintain control of inmates, must often make instantaneous, on-the-spot decisions concerning the need to apply force without having to second-guess himself." *Sampley v. Ruettgers*, 704 F.2d 491, 496 (10th Cir. 1983) (internal quotation marks omitted). Therefore, "review of a claim of the use of excessive force in a prison is to be deferential to the prison." *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir.

5

1997).  In particular, "when prison officials must act to preserve internal order and discipline, we afford them wide-ranging deference."  *Redmond*, 882 F.3d at 938 (internal quotation marks omitted).  Although "[t]his deference does not insulate from review actions taken in bad faith and for no legitimate purpose," neither does it permit courts to "freely substitute their judgment for that of officials who have made a considered choice."  *Id.* (internal quotation marks omitted).

Accepting, solely for summary judgment purposes, Thompson's claim that the effects of the pepper spray caused him to fall and injure his back,[2] the undisputed evidence shows that Orunsolu administered pepper spray "in a good faith effort to maintain or restore discipline," not "maliciously and sadistically for the very purpose of causing harm."  *Id.* at 936 (internal quotation marks omitted).  In particular, the district court found—and Thompson has not challenged—that: (1) "Fine (Plaintiff's cellmate) reached through the cell's food pass, grabbing Orunsolu," R. Vol. 1 at 298; and (2) Orunsolu responded first by "verbally instruct[ing] Fine to stop" and then, when "Fine ignored Orunsolu's orders," "deploy[ing] a two to three second burst of mace into Plaintiff's cell, striking Fine in his midsection," *id.* at 299.

As we have recognized, "prisoners cannot be permitted to decide which orders they will obey, and when they will obey them."  *Redmond*, 882 F.3d at 938 (internal quotation marks omitted).  Based on Fine's conduct, the district court properly found that Orunsolu's use of force was justified and that the amount of force was not

---

[2] The district court found "any injury . . . was minimal."  R. Vol. 1 at 299. And as outlined above, the record on Thompson's back injury is mixed, at best.

disproportionate to the need. Thompson's secondhand exposure to the pepper spray does not alter that calculus. The court, therefore, properly concluded that Thompson failed to satisfy his burden under the first prong of qualified immunity of showing a constitutional violation. We, therefore, need not reach the second prong. *See Hinton v. City of Elwood*, 997 F.2d 774, 780 (10th Cir. 1993).

Thompson advances several procedural arguments in an effort to defeat summary judgment, including: (1) the defendants' reply brief was untimely and, thus, the material facts he listed in his response should have been deemed admitted; (2) Orunsolu committed "purjury" [sic] and, therefore, "any claim to immunity automatically fails," Aplt. Opening Br. at 2; and (3) the defendants submitted as exhibits several medical records pertaining to a different inmate. Because Thompson offers no authority for these arguments, we need not address them. *See United States v. Banks*, 451 F.3d 721, 728 (10th Cir. 2006). Accordingly, the court properly granted summary judgment in favor of Orunsolu based on qualified immunity.

### B. Fourteenth Amendment Claim

Thompson next contends the defendants other than Orunsolu violated his due process rights under the Fourteenth Amendment by keeping him in segregation after his discipline related to the July 2 incident was dismissed. We disagree.

KDOC Corrections Managers Tim Smith and Maria Bos approved Thompson's initial placement in segregation following the July 2 incident and disciplinary report charging him with battery. After his disciplinary report was dismissed, Thompson submitted grievances to various KDOC officials regarding his continued placement in

7

segregation, insisting he should be returned to the general population.  Thompson

alleged both Smith and Bos used their respective positions "to keep [him] in

segregation after the initial reason for placement became moot."  R. Vol. 1 at 10, 11.

He also brought his due-process claim against Joe Norwood, then Secretary of

KDOC, and Dan Schnurr, then Acting Warden at EDCF.  Thompson insists KDOC

"chose to punish [him]" for the July 2 incident even though the disciplinary report

was dismissed.  Aplt. Opening Br. at 2.  He contends they kept him in segregation for

past actions for which his punishment had already been served and that his

placement, therefore, was "arbitrary and capricious."  *Id.* at 3.

"Individual liability under § 1983 must be based on personal involvement in

the alleged constitutional violation."  *Gallagher v. Shelton*, 587 F.3d 1063, 1069

(10th Cir. 2009) (internal quotation marks omitted)).  The district court correctly

determined Thompson failed to show personal participation by any of the defendants.

The undisputed evidence showed Bos and Smith approved Thompson's *initial*

placement in segregation, but there was no evidence they participated in the decision

to keep him there after the discipline was dismissed.  And although he sued Norwood

and Schnurr based on their supervisory positions and "Respondeat Superior,"

R. Vol. 1 at 11 (emphasis omitted), § "1983 does not authorize liability under a

theory of respondeat superior," *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir.

2011).  Instead, he needed to "show an affirmative link between the supervisor and

the constitutional violation," requiring: "(1) personal involvement, (2) sufficient

causal connection, and (3) culpable state of mind."  *Cox v. Glanz*, 800 F.3d 1231,

8

1248 (10th Cir. 2015) (internal quotation marks omitted). Thompson produced no such evidence. Although he correctly notes both the Warden's Office and the Secretary of Corrections were involved in the denial of his grievance,[3] "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher*, 587 F.3d at 1069; *see, e.g.*, *Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012) (finding the warden's knowledge of the alleged violation when he denied a grievance was insufficient to show personal participation). Accordingly, the court properly granted summary judgment on Thompson's due-process claim.[4]

## CONCLUSION

We affirm the district court's judgment. We grant Thompson's motion to proceed without prepayment of fees but remind him of his continuing obligation to make partial payments until the filing fee has been paid in full.

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

[3] Thompson also notes his personal injury claim was denied by both the Warden and the Secretary. But the personal injury claim related solely to his alleged back injury from the July 2 incident, not his continued confinement in segregation.

[4] The court also found: (1) "the evidence regarding Plaintiff's criminal and institutional history support[ed] the decision to keep Plaintiff in segregation even after the charges related to the use of force were dismissed," R. Vol. 1 at 303; and (2) Thompson failed to show the law was clearly established "that the Fourteenth Amendment was violated by the particular facts presented here," *id.* at 304. Because he failed to demonstrate personal participation, we need not reach these issues.

9