Dennis Lee CORTESE, Plaintiff,

v.

James L. BLACK, Ex–Sheriff of Larimer County, Colorado; Ronald Pettit, Andrew Josey, and Charles Nichols, Deputy Sheriffs of Larimer County; Larimer County Sheriff's Department; Larimer County, Colorado; Larimer County Commissioners; District Attorney Eighth Judicial District of the State of Colorado; Stuart VanMeveren, District Attorney Eighth Judicial District of the State of Colorado; Steven K. Sharpe, Terry Gilmore, Clifford E. Riedel, Deputy District Attorneys of the State of Colorado, Defendants.

Civ. A. No. 92–B–209.

United States District Court,
D. Colorado.

Nov. 23, 1993.

Dennis Lee Cortese, pro se.

Jeannine S. Haag, George H. Hass, and John N. Lefler, Harden, Schmidt, Hass & Haag P.C., Fort Collins, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Before me is defendants' motion for summary judgment on plaintiff Dennis Lee Cortese (Cortese)'s civil rights claim for violation of 42 U.S.C. § 1983. A hearing was held on this motion and it is now fully briefed. For the reasons set forth below, defendants' motion will be granted as to the Larimer County Commissioners in their individual capacity and as to defendants Van-Meveren, Sharpe, Gilmore, and Riedel. The motion will be denied as to the remaining defendants.

### I.

Cortese was the owner and operator of a topless doughnut shop in Larimer County, Colorado, known as "Debbie Duz Donuts." Cortese alleges he was the victim of a conspiracy by defendants, initially, to keep his donut shop from opening, and, once opened, to close the shop down. The parties do not agree on the facts in this case. For the purposes of this motion, I will review the evidence in the light most favorable to the non-moving party. As a result, Cortese's version of the facts leading up to this suit follows.

Cortese conceived of his donut shop business in January 1989. He was 43 years old at this time and had spent the previous 25 years in the heating/air conditioning business in Fort Collins, Colorado. Cortese chose the

location for his donut shop influenced by the fact that 60,000 trucks per month passed by the location. He contacted the appropriate city and county entities needed to obtain approval for his plan; no resistance was given to the idea of a "donut shop for truckers." Cortese purchased the property for the donut shop in February 1989.

Once the news hit the front page of the local paper that the donut shop would be topless, attitudes changed. The Larimer County Planning and Zoning Department imposed new and additional building requirements before the donut shop could open. The Highway Department demanded additional improvements necessary for an access permit onto the property. Just four months before the scheduled opening, the Larimer County Commissioners passed a Nude Entertainment Ordinance targeting the donut shop. The new demands imposed by governmental entities cost Cortese an additional $66,000 before his topless donut shop could open.

Once the donut shop opened, Cortese claims that incessant harassment by the Larimer County Sheriff's Department began. The local sheriff, James Black (Sheriff Black) announced to the community that he would do everything in his power to see that "Debbie Duz Donuts" would not continue operations in Larimer County. The harassment included constant surveillance by sheriff's deputies from across the street using high-power binoculars and a movie camera. Undercover agents entered the shop to induce the topless waitresses into prostitution. Soon after opening, Cortese was accused of harassment, convicted of a Class III misdemeanor, and sentenced to a six-month jail term which was subsequently overturned on appeal.

Finally, Sheriff Black hired Ron Pettit as an undercover agent to investigate the donut shop. Ron Pettit misrepresented himself to Cortese as someone interested in investing in the donut shop, but conditioned his investment on the shop also providing drugs and prostitution. At one point Pettit showed Cortese a $60,000 bank letter of credit. Cortese was suspicious of Pettit's motives and reported these suspicions to the F.B.I.

Cortese alleges that Pettit's goal was to induce Cortese into illegal acts, and when Cortese refused to cooperate, the defendants took more drastic measures.

On April 2, 1990, Cortese was arrested at the donut shop and charged with four felony counts, two counts of unlawfully, feloniously and knowingly selling a controlled substance, and two counts of conspiring to sell methamphetamine and cocaine contrary to state law. The news media was contacted two hours before the execution of the no-knock warrant and invited to witness Cortese's arrest and the closing of the donut shop. As a result of his arrest, Cortese's donut shop was closed pursuant to a local nuisance law. When the donut shop was seized, the sheriff's deputies also seized Cortese's personal records, papers and personal property. An affidavit of Cortese's ex-wife, Lineta Wortman, indicates that while in her car outside the donut shop, she took photographs of the sheriff's deputies removing property from the donut shop after its closure. The deputies gave chase to Wortman and confiscated the camera and film which have not been returned. Cortese was held in jail as he was unable to post bond set in the amount of $50,000. Cortese's business partner, Gary Petty was also arrested and charges against him were subsequently dropped.

The nuisance law used to closed down Cortese's business had not previously been used in Larimer County. Five other businesses were closed under the nuisance law within weeks of the closing of "Debbie Duz Donuts." Cortese alleges these additional closings were done to add legitimacy to defendants' actions in his particular case. All five other businesses, excluding the donut shop, were allowed to reopen within hours, or at the most, two days later.

Cortese moved for a change of venue of his criminal trial fearing he would not receive a fair trial in Larimer County. The motion was denied. On January 7, 1991, Cortese pled guilty, pursuant to *North Carolina v. Alford*, 400 U.S. 25, 35 n. 8, 91 S.Ct. 160, 166 n. 8, 27 L.Ed.2d 162 (1970), to one count of unlawfully, feloniously and knowingly obtaining a controlled substance by fraud, deceit, misrepresentation or subterfuge. § 12–22–

315, 5A C.R.S. (1991). Throughout the plea negotiations, and at the time the plea was accepted, Cortese maintained his innocence. Cortese claims he was influenced by his attorney to accept the plea agreement because he would not receive a fair trial in Larimer County, the *Alford* plea would allow him to maintain his innocence, the plea included probation with no jail time to be served, and he could get on immediately with this civil rights lawsuit.

On February 4, 1992, Cortese filed this *pro se* lawsuit against defendants setting forth three claims for relief. The first claim alleged a violation of equal protection. The second claim alleged harassment and a violation of equal protection. The third claim alleged violations of 42 U.S.C. §§ 1983 and 1985. Cortese seeks monetary damages from the defendants.

On July 28, 1992, a magistrate judge recommended that defendants, City of Fort Collins, Colorado Department of Highways and John Does 1–3 be dismissed from this action, without prejudice. I approved that recommendation and dismissed these defendants on August 5, 1992.

The remaining Larimer County defendants, James Black, Ronald Pettit, Andrew Josey, Charles Nichols, Larimer County Sheriff's Department, Larimer County Building Department, Larimer County Planning and Zoning Department, Larimer County, Larimer County Commissioners, District Attorney Eighth Judicial District of the State of Colorado, Stuart VanMeveren, Steven Sharpe, Terry Gilmore, and Clifford Riedel, now move for summary judgment. The magistrate judge again recommended that the motion be granted. Cortese objected to the magistrate's recommendation.

Pursuant to Fed.R.Civ.P. 72(b), I reviewed *de novo* those parts of the recommendation to which Cortese specifically objected. By order dated March 30, 1993, I affirmed the magistrate's recommendation and dismissed as to defendants Larimer County Building Department and Larimer County Planning and Zoning Department on all claims and the remaining defendants as to the claims for harassment, denial of equal protection and violation of 42 U.S.C. § 1985. I postponed

ruling on the § 1983 claim as to the remaining defendants so that a hearing could be held. At this hearing, I indicated that I considered the bare pivotal issue to be the preclusive effect of Cortese's "*Alford* plea" to the criminal charges in the state court proceeding and, therefore, ordered that copies of the state court proceeding be provided for my review. Numerous affidavits, motions, and responses from the parties followed.

After review of the entire record, and for the reasons set forth below, I reach the following conclusions: 1) Cortese has alleged a cause of action pursuant to 42 U.S.C. § 1983; 2) summary judgment will be granted in favor of Stuart VanMeveren, Steven Sharpe, and Terry Gilmore on the basis of absolute prosecutorial immunity; 3) the claims against the Larimer County Commissioners in their individual capacities will be dismissed; 4) defendants Black, Josey, Pettit and Nichols are not, as a matter of law, entitled to qualified immunity.

## II.

Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992).

Once the moving party demonstrates an absence of evidence supporting an essential element of the plaintiff's claim, the burden shifts to the plaintiff to show that there

is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. To satisfy this burden the nonmovant must point to specific facts in an affidavit, deposition, answers to interrogatories, admissions, or other similar admissible evidence demonstrating the need for a trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Mares,* 971 F.2d at 494.

▮ Summary judgment is also appropriate where no reasonable jury could return a verdict for the claimant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511; *Mares,* 971 F.2d at 494. However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Mares,* 971 F.2d at 494.

### III.

In support of their motion for summary judgment, defendants argue: 1) Cortese has failed to plead the violation of a constitutional right; 2) Cortese has failed to establish municipal liability in failing to allege facts sufficient to support a policy; 3) Cortese's claims are barred by the doctrine of *res judicata*; 4) defendants Stuart VanMeveren, Steven K. Sharpe, Terry Gilmore and Clifford Riedel are entitled to absolute prosecutorial immunity; and, 5) defendants James Black, Ronald Pettit, Andrew Josey, and Charles Nichols are entitled to qualified immunity. I will address each of these arguments in turn.

### A. Cortese's Claims pursuant to 42 U.S.C. § 1983

The Supreme Court has established two necessary elements for recovery of damages under a 42 U.S.C. § 1983 civil rights claim. A plaintiff must prove that the defendant deprived him of a right secured by the United States Constitution and, the defendant deprived plaintiff of this right under color of

state law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). Here, defendants do not dispute that all actions were taken under color of state law. The only issue is whether Cortese suffered a constitutional deprivation. Defendants argue that Cortese has failed to plead the violation of a clearly established constitutional right. I disagree.

▮ A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). This means that if the court can reasonably read the pleadings to state a valid claim on which plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. *Id.*

In support of his § 1983 claim Cortese alleges that a conspiracy among defendants violated his rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. In support of this allegation, Cortese states that defendants conspired to close his business and in furtherance of the conspiracy they: 1) treated him differently than other businesses in Larimer County; 2) continually harassed him; 3) planted illegal drugs on his property; 4) unlawfully obtained a no-knock search warrant; 5) illegally arrested and falsely imprisoned him; 6) illegally seized his business; and, 7) illegally sold his business.

▮ Accepting Cortese's version of the facts, I conclude that he has alleged a valid § 1983 claim for unlawful arrest and illegal search and seizure in violation of the Fourth Amendment. Cortese's guilty plea prevents him from bringing a claim for what the facts otherwise clearly allege—malicious prosecution. *See Anthony v. Baker,* 808 F.Supp. 1523, 1526 (D.Colo.1992) (holding that under Colorado law, an element of a claim for malicious prosecution is that the criminal case ended in the defendant's favor). Moreover, I discern no violation of Cortese's First, Fifth, or Eighth Amendment rights. The First Amendment protects freedom of speech. I

find no First Amendment violation as nudity is not recognized by the courts as communicative expression. *Barnes v. Glen Theatre, Inc.,* —— U.S. ——, —— – ——, 111 S.Ct. 2456, 2462–64, 115 L.Ed.2d 504, 514–15 (1991). The Eighth Amendment prohibits infliction of cruel and unusual punishment. *Miller v. Glanz,* 948 F.2d 1562, 1569 (10th Cir.1991). The facts as alleged to not support infliction of cruel and unusual punishment. Finally, to state a cause of action for deprivation of rights pursuant to the Fifth Amendment, it must be alleged that the federal government was somehow involved. *Dockstader v. Miller,* 719 F.2d 327, 332 (10th Cir.1983), *cert. denied,* 467 U.S. 1256, 104 S.Ct. 3546, 82 L.Ed.2d 849 (1984). There is no indication of federal involvement here. Accordingly, I will address defendants' remaining arguments in regard to alleged violations of Cortese's Fourth Amendment rights.

## B. Application of Res Judicata and Collateral Estoppel

Defendants argue that Cortese's claims are barred by the doctrine of *res judicata.* Cortese argues that because his guilty plea was couched in the form of an *Alford* plea, it has no preclusive effect. I will first address the effect of Cortese's guilty plea entered pursuant to *North Carolina v. Alford,* 400 U.S. 25, 35, 91 S.Ct. 160, 166, 27 L.Ed.2d 162 (1970).

### a) Collateral Consequences of the *Alford* Plea

■■■ Cortese refers to his plea as an "*Alford—nolo contendere* plea." An *Alford* plea, however, differs from a plea of *nolo contendere.* Under a plea of *nolo contendere,* a defendant does not expressly admit his guilt, but nonetheless waives his right to trial and authorizes the court, for purposes of the case, to treat him as if he were actually guilty. *North Carolina v. Alford,* 400 U.S. 25, 35 n. 8, 91 S.Ct. 160, 166 n. 8, 27 L.Ed.2d 162 (1970). Courts may accept a plea of *nolo contendere* without inquiring into actual guilt. *Id.*

■■■ Under an *Alford* plea, a defendant maintains innocence while entering a plea of guilty because the defendant con-

cludes that his interests require entry of a guilty plea and the record before the court contains strong evidence of actual guilt. *See Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970). A guilty plea is an admission of all the elements of the criminal charge. *Blohm v. C.I.R.,* 994 F.2d 1542, 1554 (11th Cir.1993). Guilty pleas must be rooted in fact before they may be accepted. Fed. R.Crim.P. 11(f); *Alford,* 400 U.S. at 35 n. 8, 91 S.Ct. at 166 n. 8. Accordingly, courts treat *Alford* pleas as having the same preclusive effect as a guilty plea. *See, e.g., Blohm,* 994 F.2d at 1555; *Graybill v. U.S. Postal Service,* 782 F.2d 1567, 1573 n. 1 (Fed.Cir. 1986). The collateral consequences of a guilty plea may not be avoided by the simultaneous assertion of innocence. *Blohm,* 994 F.2d at 1554. I conclude that Cortese's *Alford* plea has the same preclusive effect as a guilty plea.

### b) Res Judicata, Collateral Estoppel and § 1983

■■■ Under proper circumstances, federal courts accord preclusive effect to issues decided by state courts. *O'Connor v. City and County of Denver,* 894 F.2d 1210, 1225 (10th Cir.1990). The doctrines of res judicata and collateral estoppel reduce unnecessary litigation, foster reliance on adjudication, and "promote the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen v. McCurry,* 449 U.S. 90, 95–96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Indeed, Congress has specifically required all "federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Id.* at 96, 101 S.Ct. at 415 (quoting 28 U.S.C. § 1738).

In *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court was asked to decide whether a determination in a Missouri state court criminal proceeding, which rejected the criminal defendant's motion to suppress evidence under the Fourth Amendment, barred the relitigation of that claim in a federal § 1983 action. The Court determined that since § 1983 did not work an implied repeal of the

full faith and credit clause, 28 U.S.C. § 1738, the clause was fully applicable in federal court § 1983 actions. Since the Missouri law of collateral estoppel would have barred a subsequent state court action based on the violation of Fourth Amendment rights, the federal action was barred as well, so long as the plaintiff had a full and fair opportunity to litigate that issue at the state criminal trial. 449 U.S. at 95, 101 S.Ct. at 415.

Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), involved a criminal conviction following a trial. In Haring v. Prosise, 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), the Court was asked to determine whether a plea of guilty in a Virginia criminal proceeding precluded the criminal defendant from bringing a federal § 1983 action for damages based on an allegedly unconstitutional search. Applying the full faith and credit clause, the Court unanimously held that since, under Virginia law, a guilty plea would not foreclose a later suit contesting the legality of a search, the guilty plea did not bar the section 1983 action. Id. at 316, 103 S.Ct. at 2374–75. Under Haring, the full faith and credit clause renders state preclusion doctrine presumptively applicable to a § 1983 suit brought by a former state criminal defendant who pleads guilty, subject to a federal due process qualification that state law can preclude only issues that the § 1983 plaintiff had a "full and fair opportunity to litigate" in the state proceeding. Id. at 313, 103 S.Ct. at 2373.

Cortese relies on Haring in arguing that he is not precluded from bringing his claim based on alleged Fourth Amendment violations. Haring, however, does not hold that a guilty plea may never preclude a § 1983 claim. Here, the issue is what preclusive effect Colorado law would give to a guilty plea in a subsequent suit alleging Fourth Amendment violations. This practice of looking to state preclusion law has been followed by the Tenth Circuit in its recent decisions. See, e.g., Dixon v. Richer, 922 F.2d 1456 (10th Cir.1991) (applying Colorado preclusion law); Franklin v. Thompson, 981 F.2d 1168 (10th Cir.1992) (applying Oklahoma preclusion law); Hubbert v. City of Moore, Ok., 923 F.2d 769 (10th Cir.1991) (applying Oklahoma preclusion law).

### c) Res Judicata and Collateral Estoppel under Colorado Law

Under the doctrine of res judicata, or claim preclusion, a plaintiff who loses a lawsuit is barred from bringing a later suit based on the same "cause of action" as the first. People v. Hearty, 644 P.2d 302, 312 (Colo.1982). The existing judgment is conclusive of the rights of the parties in any subsequent suit on the same claim. Id. It bars litigation not only of all issues actually decided, but of all issues that might have been decided. City and County of Denver v. Block 173 Associates, 814 P.2d 824, 830 (Colo.1991). However, since a § 1983 civil suit is not the same "cause of action" as the state's criminal case against the plaintiff, res judicata is inapplicable. Slayton v. Willingham, 726 F.2d 631, 633 (10th Cir.1984); 18 Wright, Miller, and Cooper, Federal Practice and Procedure § 4474, at 748–49 (1981). Cortese's criminal proceeding can preclude his civil rights action, if at all, only through the application of collateral estoppel.

Under the doctrine of collateral estoppel, or issue preclusion, a litigant in one action may not in a later action, assert the contrary of issues actually decided in and necessary to the judgment of the first action. City and County of Denver v. Block 173, 814 P.2d 824, 831 (Colo.1991). Colorado law requires four factors be met to preclude litigation of an issue: (1) the issue was actually litigated and necessarily adjudicated in a prior proceeding; (2) the party against whom preclusion is sought was a party to or was in privity with a party in the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom preclusion is sought had a full and fair opportunity to litigate the issue in the prior proceeding. Id.

In light of the foregoing factors I conclude that collateral estoppel does not bar Cortese's Fourth Amendment based § 1983 claims in this case. First, the propriety of the defendants' actions was never "actually litigated" in the state court criminal proceedings. Second, the issue of whether the de-

fendants' conduct constituted a violation of Cortese's Fourth Amendment rights was not "necessarily determined" in the state court criminal proceeding. The state trial court never had the opportunity in the criminal proceeding to make an actual determination as to the constitutionality of defendants' conduct since the plea of guilty was entered before any court decision. Moreover, the propriety of the defendants' conduct was not essential to the trial court's acceptance of the Cortese's guilty plea.

■ Cortese states that he accepted the plea agreement specifically to move forward with his § 1983 civil rights claim. The entry of a plea of guilty, without more, does not permit me to presume that the defendants' actions were conducted in a constitutionally permissible manner. *Accord Slayton v. Willingham,* 726 F.2d 631 (10th Cir.1984) (holding that preclusive effect of guilty plea under Oklahoma law does not bar § 1983 action based on illegal search because issue was neither necessary to nor actually decided by state court's judgment); *Brown v. Edwards,* 721 F.2d 1442 (5th Cir.1984) (holding state court conviction does not bar federal court action based on unconstitutional arrest, the validity of which was not litigated in state court); *Davis v. City of Charleston, Mo.,* 827 F.2d 317 (8th Cir.1987) (conviction does not bar defendant's argument for unlawful arrest because the issue of guilt or innocence of the charge is not identical to the claim of unlawful arrest based upon an absence of probable cause); *Rose v. Bartle,* 871 F.2d 331, 351 (3d Cir.1989) (favorable termination of criminal proceeding is not an element of a § 1983 false arrest claim).

The fact that no actual determination as to the legality of the defendants' actions was made by the state court distinguishes this case from *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (state court had made an actual determination as to legality of police department's conduct in denying plaintiff's motion to suppress evidence); *see also Hubbert v. City of Moore, Ok.,* 923 F.2d 769, 773 (10th Cir.1991) (issue of probable cause to arrest was fully and fairly litigated in prior state court criminal proceeding).

Defendants rely on *Metros v. United States District Court for the District of Colorado,* 441 F.2d 313 (10th Cir.1971) in arguing that collateral estoppel applies here. In *Metros,* the Tenth Circuit precluded a litigant who had entered a plea of guilty in a Colorado state criminal proceeding from relitigating the issue of whether there was probable cause for issuance of a search warrant. The holding was based on the proposition that a defendant who pleads guilty waives all "nonjurisdictional" challenges to his conviction. *Id.* at 317. In a more recent case, however, the Tenth Circuit described this rationale as a *non sequitur. Slayton v. Willingham,* 726 F.2d 631, 634 (10th Cir. 1984). More importantly, *Metros* was decided before the Supreme Court indicated in *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), and *Haring v. Prosise,* 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), that when confronted with this issue, the federal court should look to state preclusion law. Accordingly, *Metros* is not controlling in this case.

■ When a criminal defendant pleads guilty he admits all of the elements of the crime with which he is charged. *Slayton,* 726 F.2d at 634; *Ellifrits v. Davies,* 769 F.Supp. 350, 352 (D.Kan.1991); *Ochoa v. State,* 848 P.2d 1359, 1361 (Wyo.1993). In *People v. Cortese,* Larimer County District Court Case No. 90–CR–295, Cortese entered his *Alford* plea to the charge of knowingly obtaining a controlled substance by fraud and deceit. The alleged date of this crime was March 30, 1990. At most, therefore, collateral estoppel may apply in this case to prevent Cortese from asserting that the drugs were planted on his property on this date. The fact that Cortese's plea was an *Alford* plea does not change this result.

## C. Prosecutorial Immunity

■ At all relevant times defendant VanMeveren was the District Attorney of the Eighth Judicial District of the State of Colorado and defendants Sharpe, Riedel, and Gilmore were Deputy District Attorneys, Eighth Judicial District. The Supreme Court has extended the doctrine of absolute immunity to encompass various participants

in the judicial decision making process whose duties are deemed integral to the effective, independent operation of the judiciary. Judges, prosecutors and witnesses have been held to be absolutely immune from suit. *See Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Briscoe v. La-Hue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Prosecutors are immune from § 1983 liability for activities associated with the judicial process such as initiating and pursuing criminal prosecutions. *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–96, 47 L.Ed.2d 128 (1976); *Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484, 1489 (10th Cir.1991). Last term the Court reiterated the principle that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons,* — U.S. —, —, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993). The determinative factor as to whether absolute immunity attaches is the application of the term "advocacy" because the role of advocate is the prosecutor's main function and the one most akin to his quasi-judicial role. *Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484, 1490 (10th Cir.1991). If a plaintiff fails to establish that the prosecutor acted beyond the scope of his respective duties, the prosecutor is entitled to a grant of prosecutorial immunity. *Gagan v. Gately,* 673 F.Supp. 1029, 1030 (D.Colo.1987).

■ In support of his allegation that these defendants acted outside the scope of their respective duties, Cortese alleges that there was a secret meeting where it was agreed to unlawfully frame Cortese and have him falsely arrested in violation of his constitutional rights. Complaint, ¶ 72. Cortese fails, however, to provide any evidence to support this allegation. The prosecutorial defendants, on the other hand, have all submitted affidavits stating that no such meeting ever took place. Cortese also alleges that VanMeveren made a statement to fellow church members that he would help close "Debbie Duz Donuts." Complaint ¶ 71. This alleged statement by VanMeveren does not amount to a constitutional violation. I conclude that no genuine question of material fact exists on this issue and defendants Van-Meveren, Sharpe, Gilmore, and Riedel are entitled to prosecutorial immunity as a matter of law.

### D. Larimer County Sheriff's Department, Larimer County, and Larimer County Commissioners

■ Cortese has named the Larimer County Sheriff's Department, Larimer County, and the Larimer County Commissioners as defendants (Larimer County defendants). A municipality or other governmental entity may be subjected to liability under § 1983 where the action alleged to be unconstitutional executes or implements a governmental policy or custom. *Monell v. New York Dept. of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). The Larimer County defendants move for summary judgment arguing that Cortese has not alleged sufficient facts to support the existence of a policy, practice, or custom under *Monell.*

■ According to *Monell,* a municipality is not subject to liability under section 1983 on the theory of *respondeat superior.* 436 U.S. at 691, 98 S.Ct. at 2036. Here, Cortese asserts that he is not resting on a theory of *respondeat superior.* The law is clear that Cortese's claims against the Larimer County defendants require that he prove that some official behavior prompted the violation of constitutional rights which he alleges. A municipality will only be liable for the actions of its employees when they act "pursuant to official policy of some nature...." *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. Thus, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy inflicts the injury ... the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037–38.

The Court in *Monell* distinguished between municipal policy and municipal custom. It described municipal policy as a "policy statement, ordinance, regulation or decision officially adopted and promulgated" by the

municipality's officers. *Id.* at 690, 98 S.Ct. at 2036. It described municipal custom as "persistent and widespread ... practices of ... officials." *Id.* at 691, 98 S.Ct. at 2036.

Subsequently, in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Court examined the circumstances under which a decision by municipal policymakers on a single occasion could satisfy the "official policy" requirement of *Monell*. The *Pembaur* Court noted that a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it represents an act of official government "policy." *Pembaur*, 475 U.S. at 481, 106 S.Ct. at 1299. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is taken only once or is to be taken repeatedly. *Id.*

▆ To identify "final" policymakers, courts must look to state law and local ordinances or regulations to determine where that law places the responsibility for making law or setting policy in a particular area. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986)). This determination is a question of law for the courts, not for the jury.

▆ In Colorado a sheriff is an elected county officer, § 30–10–501, 12A C.R.S. (1986), and is responsible for the official acts of his deputies. § 30–10–506. In the context of this case I conclude that the sheriff is properly defined as a final "policymaker" of the county. Colorado law provides that both the sheriff and the county are suable entities. § 30–11–101(1)(a) and § 30–10–522. I will treat Cortese's suit against the Sheriff's Department as a suit against the sheriff in his official capacity. *See Wigger v. McKee*, 809 P.2d 999, 1003–04 (Colo.App.1990) (holding that the Sheriff's Department qualifies as a "person" under 42 U.S.C. § 1983). Further, a suit against a county shall be brought against "the board of county commissioners of the county of Larimer." 30–11–105, 12A C.R.S. (1986). Accordingly, I will order that this suit be recaptioned in this manner. The question whether this action should proceed against both municipal entities is left for another day.

Contrary to defendants' arguments, I do not regard Cortese's complaint as an attempt to impose liability under the theory of *respondeat superior*. Rather, Cortese's allegations state a direct cause of action against these municipal entities. Cortese specifically alleges that he suffered constitutional violations as a result of actions taken pursuant to governmental policy or custom. Under *Pembaur*, a decision to adopt a particular course of action, when made by a policymaker, represents an act of official government policy. A material question of fact exists as to whether deputies Josey, Pettit and Nichols were acting in accordance with decisions made by Sheriff Black, acting in his official capacity as Sheriff of Larimer County. Accordingly, Cortese's suit against the Larimer County Defendants will not be dismissed for failure to allege a policy.

### E. Black, Petit, Josey, Nichols and the County Commissioners in their Individual Capacities

Cortese fails to specify in what capacity these defendants are being sued. Reading his complaint broadly, as I must, I will examine whether he states claims against these remaining defendants in their individual capacities.

▆ There is no credible evidence that the Larimer County Commissioners personally participated in any alleged constitutional violations. Personal participation is an essential allegation in a § 1983 action. *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976). Accordingly, I will dismiss the suit against the county commissioners in their individual capacities.

Defendant Black was the Larimer County Sheriff at the time the alleged violations occurred. Defendants Pettit, Josey and Nichols were deputy sheriffs. Genuine questions of fact remain as to whether these

defendants participated in the alleged violations. These defendants claim, however, that they are entitled to qualified immunity as a matter of law.

Qualified immunity protects a governmental official from liability for discretionary acts performed within the scope of his office. Protection is lost only if it is determined that the official violated a well-settled constitutional right of the plaintiff of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Once a defendant asserts qualified immunity, the plaintiff must show that the right was clearly established at the time of the alleged violation and that defendant's conduct violated the right. *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 645–46 (10th Cir.1988). A particularized showing is required: "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)

The burden then shifts to the defendant to show that no material issue of fact remains that would defeat the claim of qualified immunity. *Losavio*, 847 F.2d at 645–46. Thus, if a plaintiff can demonstrate a genuine dispute of material fact as to whether defendant's conduct violated a clearly established right, the defendant is not entitled to qualified immunity.

I conclude that Cortese has made the factual allegations necessary to sustain a conclusion that these defendants personally participated in the violation of Cortese's clearly established constitutional rights. Sheriff Black is the policymaker alleged by Cortese to be behind the conspiracy to violate Cortese's constitutional rights. Pettit is the undercover officer hired by Black. Pettit, Nichols and Josey all participated in Cortese's arrest and the events leading up to the arrest. Qualified immunity is not available to these defendants.

Accordingly, it is ORDERED that defendant's motion for summary judgment is GRANTED in part and DENIED in part:

a) summary judgment is GRANTED on the basis of prosecutorial immunity as to defendants VanMeveren, Sharpe, Gilmore, and Riedel;

b) summary judgment is GRANTED as to the Larimer County Commissioners in their individual capacities;

c) summary judgment is DENIED as to the remaining defendants.